**Rita Piacentini, a Minor, by Marcia Piacentini, her Mother and Next Friend, Plaintiff-Appellant, v. Sterne S. Bonnefil, Jr. and Poor Sisters of St. Francis Seraph of the Perpetual Adoration, Inc., an Indiana Corporation, Defendants-Appellees.**

Gen. No. 50,534.

First District, Fourth Division.

March 25, 1966.

Rehearing denied by Appellee April 21, 1966.

Rehearing denied by Appellant May 25, 1966.

Morgan, Halligan, Lanoff & Cook, of Chicago (John A. Cook and Samuel M. Lanoff, of counsel), for appellant.

Howard and French, of Chicago (Richard G. French, of counsel), for appellee, Sterne S. Bonnefil, Jr.; Baker, McKenzie & Hightower, of Chicago (Michel A. Coccia, Thomas F. Bridgman and Francis D. Morrissey, of counsel), for appellee, Poor Sisters of St. Francis Seraph of the Perpetual Adoration, Inc.

MR. PRESIDING JUSTICE DRUCKER delivered the opinion of the court.

Plaintiff, a minor, by her mother and next friend, brought an action for malpractice and alleged in her complaint, first, that the defendants negligently permitted a gauze sponge to remain in her body after an appendectomy or during and after a follow-up corrective operation and, second, that defendant Bonnefil was negligent in his treatment and diagnosis of plaintiff before the operation. After the plaintiff had presented all of her evidence a judgment was entered in favor of the defendants following verdicts returned by the jury upon the direction of the trial judge, from which plaintiff now appeals.

Plaintiff first became a patient of Dr. Bonnefil on March 31, 1958, at which time she was treated for an infection of the genital organs. She was subsequently treated for various conditions four times before November 29, 1958, by either Dr. Bonnefil or his associates, the last date being November 28 at which time her condition was diagnosed by an associate as being an upper respiratory infection. On November 29, 1958, plaintiff (then approximately three years old) was taken to the defendant doctor's office by her mother because

437

she (plaintiff) looked very pale and white, had pain on the right side of her stomach and was vomiting occasionally but there is no testimony as to which if any of these symptoms were told to the doctor. His records pertaining to the condition of the plaintiff on that date contained the notation "Questionable abdominal pain. Question of mesenteric adenitis." [1] The illness of the child continued and a blood count was taken which "fitted with the diagnosis of mesenteric adenitis and it fitted with the diagnosis of a respiratory infection. It did not fit very well the diagnosis of appendicitis. . . ." On March 4 the doctor did not exclude the possibility of appendicitis and on the evening of March 5 he decided to hospitalize the plaintiff because she was complaining more of having pain. The doctor told plaintiff's parents to bring her to St. James Hospital (which was operated by the defendant corporation) early the next morning; that "there was no necessity of getting her to the hospital that evening because it was not a typical case of appendicitis." After the child was hospitalized on the morning of March 6 Dr. Driscoll was called in as a consultant and was told that the child had "nausea and anorexia." An appendectomy operation was performed by Dr. Bonnefil that day and the appendix was found to be in the retrocecal position. It was inflamed, enlarged and perforated and had ruptured twelve to twenty-four hours prior to the operation. During the operation and while the abdominal cavity was open the doctor used surgical gauze sponges, each of which was four inches by four inches and had a black line of radio-opaque material running through it. There is no testimony that any other type of sponge was used during the operation or that any sponges were used inside the abdominal cavity. The

---

[1] Dr. Bonnefil testified that:

Mesenteric adenitis is a condition where the lymph nodes inside the abdomen are swollen. It is a virus infection usually following an upper respiratory infection.

438

abdominal cavity was closed upon completion of the operation. The plaintiff was discharged from the hospital on March 12, 1959, but returned on March 26 to enable the doctor to perform an operation to remove an abscess at the incision. A drain was inserted by the use of forceps. Gauze sponges, which did not have the radiopaque material in them, were used during this operation to "blot out the pus and wipe the pus that was coming out," but there was no testimony that they were used inside the abdominal cavity, which remained closed. Dr. Bonnefil, examined pursuant to section 60 of the Civil Practice Act (Ill Rev Stats 1963, c 110, § 60), testified that:

The abscess was very superficial. It was immediately under the skin layer. It was above the muscle. Between the muscle and the skin. It didn't extend below that to any other organs or into the abdomen. . . . I made an incision about 3 to 3½ inches along the same incision line. . . . I cut about ⅛ of an inch deep, the thickness of the skin. At no time did I cut through the lower layer. After the cut was made the pus came out. It was explored with my finger. I introduced the finger into the incision to explore the inside of the cavity to make sure there was nothing else. I felt inside all around to make sure that the abscess was superficial, that there was no connection between the cavity under the skin and the abdominal cavity internally. I was satisfied that there was no such connection. . . . I could feel everything was all right with the finger. I did not feel any foreign object in the wound.

The dressing on the wound was required to be changed at least twice daily and, since plaintiff was discharged from the hospital five days after the operation, this was done at the plaintiff's home by Dr. Bonnefil and also by Carol Anderson, a medical assistant to another physi-

cian. Each day during the period that Carol Anderson changed the dressing there was a strong odor and greenish discharge emanating from the incision. On either April 12 or 15 the doctor removed the drain and on approximately April 17 Carol Anderson noticed a piece of gauze, which had worked its way out of the wound, protruding through the opening of the incision and "it had green matter." Dr. Bonnefil was notified and at his direction plaintiff was taken to St. James Hospital where a gauze sponge, eight to ten inches long (which was longer and thicker than that used at home), saturated with green blood-like pus and blood, and which did not have the radio-opaque material running through it, was removed and thrown away.

█ █ The plaintiff in a malpractice action has the the burden of proving that the doctor was unskillful and negligent and in addition that this want of skill and care caused the injury to the plaintiff. Wade v. Ravenswood Hospital Ass'n, 3 Ill App2d 102, 120 NE2d 345. The test by which a plaintiff's evidence is judged when subjected to a motion for a directed verdict is whether there is any evidence or reasonable inference arising from that evidence tending to prove the cause of action alleged in the complaint. Scardina v. Colletti and Norwegian American Hospital, 63 Ill App2d 481, 211 NE 2d 762.

 Plaintiff first argues that Dr. Bonnefil was negligent in his preoperative diagnosis and claims that the court erred in sustaining objections to nine hypothetical questions asked of the expert witness, Dr. Lawrence, as to the standard of care.[2] We have examined these questions and find no error in the rulings of the court. Since there must be some evidence tend-

---

[2] These were hypothetical questions Nos. 8 through 16. Seventeen questions were submitted to Dr. Lawrence, the first seven and the last of which related to operative and post-operative circumstances.

ing to prove each of the facts assumed in a hypothetical question (Chicago & E. I. R. Co. v. Wallace, 202 Ill 129, 66 NE 1096; Butler v. Palm, 36 Ill App2d 351, 184 NE2d 633), hypothetical questions Nos. 8, 9, 10 and 11 were properly rejected by the court because they assumed a fact not in evidence. Questions Nos. 12 and 15, which inquired whether it would be usual and customary to hospitalize the child at various times prior to March 6, were properly rejected since even an affirmative answer would not give rise to an inference that the doctor was guilty of negligence in not hospitalizing the child until March 6. Question No. 16 which inquired whether there would have been a greater opportunity to avoid a ruptured appendix if the patient was hospitalized on March 4 rather than March 6, was properly rejected for the same reason. With respect to questions Nos. 13 and 14, no offer of proof was made and therefore the propriety of the rulings thereon are not properly before a court of review. In re Estate of Garner, 8 Ill App2d 41, 130 NE2d 219; Grosh v. Acom, 325 Ill 474, 156 NE 485.

■ There was no other evidence offered as to Dr. Bonnefil's negligence in his preoperative diagnosis. We believe that all reasonable men would reach the conclusion that the evidence and reasonable inferences therefrom did not establish the doctor's guilt of that negligence.

■ Plaintiff next attempted to establish that a gauze sponge was left in her body during the appendectomy or the follow-up corrective operation because of the negligence of either or both of the defendants. Dr. Bonnefil, called as a witness under section 60 of the Civil Practice Act (Ill Rev Stats 1963, c 110, § 60), testified that a wound of this nature (referring to the plaintiff's incision) does not have a tendency to draw things into it. An objection was sustained as to hypothetical question No. 7 asked of the expert witness Dr.

441

Lawrence (whereby the plaintiff sought to establish the same general point) which stated:

Doctor, assume that a three year old child had a drainage situation from a wound which was open on March 25, 1959 following a prior appendectomy at the same site which was closed on that date, prior appendectomy having been on March 6, 1959; assume, Doctor, that after this wound was open and during the period which it was draining, which period went from March 25, 1959 until the date which I will specify on which a foreign—some gauze was removed from the wound. During that period the wound was dressed by applying four by four standard gauze bandages, Johnson & Johnson packaging, over the wound in layers from three to five inches thick, covered over with adhesive and changed twice or three times a day by either a technician or by a physician.

And do you have an opinion, Doctor, based on reasonable medical and surgical certainty, as to whether any of the dressing pads, the four by four pads which I have mentioned might or could have worked its way into the wound between one dressing period and the next . . . so that the material that worked its way into the wound which was similar, excepting that it was four by four, to Plaintiff's Exhibit Number 2 [a Johnson & Johnson gauze pad box, the gauze being the same kind of dressing used by her], appeared so that only a small corner appeared above the wound and that the rest was in below the surface of the wound and below the skin.

Do you have an opinion, Doctor, as to whether— based on reasonable and medical surgical certainty whether any such dressing might or could have worked its way into the wound in that manner?

Defendants made only a general objection to this hypothetical [3] but now urge in their respective briefs that the question was improper because (1) it did not include certain relevant undisputed facts which were in evidence (though neither party specifies these facts); (2) the question required a speculative answer; and (3) that no proper offer of proof was made and therefore the issue as to the propriety of this hypothetical was not preserved for review. In Chicago & E. I. R. Co. v. Wallace, 202 Ill 129, 66 NE 1096, it was contended that the trial court erred in refusing to sustain objections to certain hypothetical questions. After noting that only a general objection was made to the questions the court stated at pages 132, 133:

> It is a well settled rule in this State, that a general objection to a question asked of a witness is not sufficient, where the defect is one that could be obviated in case a specific objection were made . . . . The rule . . . has been held to apply to such hypothetical questions as are here under consideration.

In Chicago City Ry. Co. v. Bundy, 210 Ill 39, 71 NE 28, the court stated at page 46:

> Objection is also made to some of the hypothetical questions put to physicians who testified on behalf of appellee. These objections, made in the trial court, were not sufficiently specific to sustain the special objection here sought to be raised.

If the specific objections which are raised in this court for the first time by the defendants with respect to the exclusion of undisputed facts and the speculative nature

---

[3] Mr. Bridgman (for the hospital): I have an objection, your Honor.
Mr. French (for Dr. Bonnefil): Objection.

of the answer were made during the trial, any such errors in the hypothetical question could have been obviated at that time. Therefore the objection made as to this hypothetical question was improper and should not have been sustained.

Plaintiff's offer of proof on the aforesaid question, which was held to be in proper form by the trial judge, provided as follows:

And if permitted to answer the physician would have testified that he had an opinion on that subject. And then in answer to the next question, which would have been what his opinion was, the witness would have testified that in his opinion a dressing placed flat over a wound would not or could not be expected to work its way into the wound; that this would be contrary to the normal action of the body, and there would be nothing in the wound which would tend to draw anything into it and certainly not into an incision in which a four by four gauze was lodged below the surface of the skin so that only a corner thereof was protruding.

██ We would also point out that the ultimate question (in hypothetical question No. 7) asked of the witness was proper. Clifford-Jacobs Forging Co. v. Industrial Commission, 19 Ill2d 236, 166 NE2d 582.

██ ██ Carol Anderson, who attended the plaintiff at home, testified that she has been employed as a medical assistant to Dr. Charles Baer for ten and one-half years; that her duties consisted of taking case histories and assisting him "in injections, blood counts, do urinalysis, and dressings and all around routine"; that on numerous occasions she observed and assisted in the dressing of wounds in Dr. Baer's office; that she changed the dressings on plaintiff's wound twice each day; and that she is familiar with the appearance of wounds of

this character (referring to plaintiff's wound). The witness was then asked:

> Now, do you have an opinion as to whether anything could have been placed into the wound inside the body from the outside?

An objection to this question, which was sustained, was based upon the ground that "he [plaintiff's attorney] is asking for opinion evidence which is speculative evidence from a lay witness. . . . Whether somebody could have placed this gauze in the wound is speculative." The test of the competency of an expert witness is whether he discloses sufficient knowledge of his subject matter to entitle his opinion to go to the jury. Williams v. Piontkowski, 337 Ill App 101, 84 NE2d 843. The witness was properly qualified to answer this hypothetical question and it would not be speculative evidence for her to testify as to whether someone "could" have placed the gauze in the wound. Therefore the defendants' objection was improperly sustained. The offer of proof on this question is as follows:

> [S]he would have answered that it was impossible. It would have required procedures with using medical implements, and it would have caused the appearance of the wound—that would have been apparent.

The witness was asked another question to which a general objection was sustained:

> As you dressed the wound during this period did you have occasion to see whether anything was working its way into the wound?

The objection, being general in nature, was improperly sustained. The offer of proof on this question was:

> [S]he would have testified if permitted that during the time that she was dressing the wound she did not

445

at any time observe anything working its way down into the wound or any such action on the part of the wound that she was dressing.

A directed verdict shall be granted where the evidence is such that all reasonable men would reach the same conclusion or where there is a total failure to prove one or more of the elements necessary to the cause of action. In considering the question of whether the trial court erred in directing a verdict for the defendants a reviewing court will consider only the evidence most favorable to the plaintiff but including evidence that was improperly excluded by the court. Reilly Tar & Chemical Corp. v. Lewis, 301 Ill App 459, 23 NE2d 243. Upon considering the evidence most favorable to the plaintiff, including the evidence that was improperly excluded by the trial court, we find that a prima facie case against the defendant corporation was not established. There is no evidence that the type of sponge which was removed from the plaintiff's body was used at any time during the appendectomy on March 6 and by stipulation of the plaintiff's attorney no act of negligence occurring on any other date was charged against the hospital.[4] Therefore the order of the court directing the jury to return a verdict in favor of the defendant corporation was proper.

However, there is no question but that a piece of gauze was removed from the plaintiff's body.

---

[4] The colloquy at the beginning of the trial during which that stipulation was made is as follows:

Mr. Bridgman [attorney for the hospital]: Again, Mr. Cook, in order to make my position clear, the only negligence you have charged against my client and will present during the trial of this case is the alleged negligence in leaving this sponge or foreign material in the abdomen—

Mr. Cook [plaintiff's attorney]: That's right.

Mr. Bridgman:—of the child during the appendectomy performed on March 6th of '59. Is that correct?

Mr. Cook: That is correct.

We believe that under the evidence and favorable inferences therefrom, reasonable men could have differed as to whether the gauze sponge which was removed from the plaintiff's body could have entered the wound in the course of the follow-up corrective operation. If a sponge was left in the plaintiff's body she has established a prima facie case of negligence against the doctor and the burden of coming forth with the evidence then shifts to the defendant doctor. Hall v. Grosvenor, 267 Ill App 119. Therefore the order directing the jury to return a verdict in favor of Dr. Bonnefil was improper.

█ █ Although not necessary to our holding in this case, we would point out that a party who calls a witness under section 60 of the Civil Practice Act is not bound to vouch for the veracity of such witness and may introduce any competent evidence in direct contradiction of his testimony, but is bound by any testimony of the witness which stands uncontradicted and unrebutted. Kapraun v. Kapraun, 12 Ill2d 348, 146 NE2d 7. Therefore material facts testified to by Dr. Bonnefil under the section 60 examination which were not contradicted or rebutted must be included in plaintiff's hypothetical questions.

The judgment of the trial court in favor of the defendant corporation is affirmed. The judgment in favor of Dr. Bonnefil is reversed and the cause remanded for a new trial in a manner not inconsistent with the views expressed in this opinion.

Affirmed in part, reversed and remanded in part.

ENGLISH and McCORMICK, JJ., concur.