**People of the State of Illinois, Plaintiff-Appellee, v. Rose White, Defendant-Appellant.**

Gen. No. 10,918.

Fourth District.

March 25, 1968.

TRAPP, J., dissenting.

Glenn O. Fuller, Hurt & Fuller, of Decatur, for appellant.

Basil G. Greanias, State's Attorney of Macon County, of Decatur, for appellee.

CRAVEN, J., delivered the opinion of the court.

The defendant, Rose White, was indicted for the offense of aggravated battery, entered a plea of guilty to the charge and was placed on probation for a term of four years. The order for probation was entered February 26, 1965. In June of 1965, she was sentenced to two weeks in the county jail for contempt of court upon a finding that she had violated the terms of her probation by committing the offense of disorderly conduct.

On August 1, 1966, a "report of violation of probation" was filed by the probation officer of the circuit court of Macon County. This report recited the nature of the original offense, the fact that the defendant was admitted to probation upon the condition, "among others, that she not violate any of the criminal laws of the State of Illinois." This report then alleged a violation of this stated condition in that:

> "she did on July 30, 1966, at 3:40 P. M. at 844 North Mercer Street, Decatur, Illinois, commit the offense of Aggravated Battery in violation of Chapter 38, Section 12-4, Illinois Revised Statutes, 1965,

in that she knowingly caused great bodily harm to Samari Spates by shooting him in the leg with a revolver."

The alleged probation violation was set for hearing on September 8, 1966. The defendant denied a violation of the terms of her probation and denied that she was guilty of the offense of aggravated battery as set forth in the report of violation. At the conclusion of the hearing, the defendant was found to have violated the terms and conditions of her probation. Probation was revoked and the defendant was sentenced to a term of not less than four nor more than five years on the original offense. This appeal is to review the revocation of probation and the sentence imposed.

The defendant urges in this court that the State did not prove by a preponderance of the evidence that she had violated the terms of her probation in the manner set forth in the report of violation and that the trial court erred in placing upon the defendant the burden of showing that the shooting was justified. Further error is asserted to have intervened in this proceeding in that the trial court based the revocation of probation upon alleged violations not set forth in the report of violation. Finally, it is contended that the punishment imposed is excessive and should be reduced on appeal.

At the hearing on the violation report, Eddie Mann was called as a witness on behalf of the People. His testimony, together with that of Bessie Amos, indicates that on July 30, 1966, the defendant, Mann, Amos and the victim Spates were together in a home occupied by the defendant and Bessie Amos. A party had been in progress for some time. Spates became intoxicated and left the home, at the defendant's insistence, at around 2:00 p. m. His conduct prior to his leaving was characterized as "cursing and raising sin" in front of the defendant's children. Spates returned at around 3:30. Eddie Mann and Bessie Amos testified that they were in the kitchen

and the defendant was in the living room at the time that Spates returned. Neither of the witnesses could see what occurred between the defendant and the victim nor could they testify as to the substance of the conversation between the two. All that the witnesses could establish was that they did hearing a banging at the door and loud voices, followed by a shot. When they left the kitchen and entered the living room, they found Spates lying on the front porch with a bullet wound in his leg and the defendant standing in the living room with a gun in her hand. Spates did not testify.

Rose White testified and related a story to the effect that when the victim returned to her home, he began kicking on the front door; that she went into the bedroom; that he continued kicking on the door, broke the lock and entered the living room. By her version, when he entered he had a knife in his hand and began cursing the defendant; that there followed a mutual exchange of cursing; that he struck at her with a knife twice, missing her on both occasions; that she jumped back, grabbed the pistol and shot him. Her contention was that she shot him because of her apprehension that he was going to cut her with the knife.

Bessie Amos, called as a witness by the defendant, testified that she found a knife on the living room floor after the shooting and had given it to the defendant. Her testimony was that she had not seen the knife prior to the shooting. A police officer testified in rebuttal concerning an interview with Rose White, relating that in his investigation on the night of the event he did not recall any conversation about an attack with a knife, but the officer specifically stated that he made no inquiry about a knife.

Spates, at the time of this hearing, was hospitalized. A motion by the State to take his testimony at the hospital was denied.

The order of the court in this case was that the defendant did commit the offense of aggravated battery in violation of chapter 38, section 12–4, Ill Rev Stats 1965, and probation was revoked.

"Aggravated battery," as defined in the cited section of the statute, incorporates the definition of the offense of battery, which is defined as including "without legal justification." The defendant here contends that there is a complete failure of proof of this element of the offense. In denying the motion to dismiss the charge at the close of the People's case, the court stated:

> "The issue of this hearing is whether or not this probationer has violated the terms and conditions of her probation. It is not whether she is guilty of another criminal offense as such, and the burden of proof is this—the nature of the hearing is this—in this court that this court at the conclusion of the hearing could not impose a sentence against the probationer for the commission of the alleged violation, he could only revoke probation and could invoke sentence on the conviction for the original offense. Therefore I think that the procedure is different enough in that the People are not bound to prove all the elements of the offense committed, alleged to have been a violation. They have made out, in my opinion, sufficient proof of a violation of this probation. . . ."

At the conclusion of all the evidence, the court observed that the defendant, "in response to the burden of showing that the shooting was justified, comes forth with what I would term a come-lately defense of producing from somewhere a small knife. . . ." As we view this record, the presence or absence of legal justification for the use of force was a question of fact for the trial court to determine as the trier of fact. The trial court

could, and clearly did, choose to disbelieve the defendant. By so doing, he determined the absence of any justification for the use of force which was here shown to have been used. See People v. Nation, 73 Ill App2d 438, 219 NE2d 261 (4th Dist 1966).

■ The sentence is asserted to be excessive. It is clear that upon revocation of probation, sentence may be imposed for the original offense upon the conviction of which the defendant was granted probation. If the act alleged to be a violation of probation constitutes another crime and sentence is to be imposed for the subsequent act, the defendant should be tried for such crime and sentence imposed under the orderly criminal processes. This does not preclude sentence on the original offense and the distinction is drawn so as to obviate any question of double jeopardy. See People v. Morgan, 55 Ill App2d 157, 204 NE2d 314, and cases there cited.

■ The authority of this court to reduce a sentence must be used with caution and circumspection. People v. Taylor, 33 Ill2d 417, 211 NE2d 673 (1965). Where, as here, however, we find that in the sentencing process there was a commingling of matters relating to the original offense with the conduct allegedly constituting the violation of probation, as well as reference to nonrecord terms and conditions of probation, we feel compelled to scrutinize the sentence. In addition, this sentence offends against the legislative mandate that all sentences be indeterminate, and an indeterminate sentence necessarily presupposes an opportunity for release determination under the Sentence and Parole Act. A sentence of not less than four nor more than five years effectively mitigates against that philosophy. What should be the spread between a minimum and a maximum sentence cannot be determined with mathematical certainty, nor indeed should the spread be subject to a precise and rigid formula necessarily applicable to all cases.

288

That there should be a substantial spread is obvious. We find ourselves in agreement with the general philosophy as expressed in People v. Brown, 60 Ill App2d 447, 208 NE2d 629 (1st Dist 1965); People v. Jones, 92 Ill App2d 124, 235 NE2d 379 (1st Dist 1968). See also 1966 U Ill L Forum 523, et seq., and ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures 21 (Tent Draft 1967).

 Accordingly, pursuant to former section 121-9 of the Code of Criminal Procedure of 1963, now Rule 615 of the Supreme Court Rules (Ill Rev Stats 1967, c 110A, § 615), the minimum sentence in this case is reduced from four years to two years. The maximum sentence imposed remains at five years. With the sentence thus modified, the judgment of the circuit court of Macon County is affirmed.

Sentence modified; judgment affirmed.

SMITH, P. J., concurs.

TRAPP, J., dissents.

TRAPP, J., dissenting:

As a dissenting view, the opinion of the court does not state valid reasons for reducing the minimum sentence imposed in this case.

If it be concluded that the record reflects that the trial court commingled the original and subsequent offenses, as well as nonrecord matters in fixing the sentence, it should be vacated and the cause remanded for sentence upon a record which can be properly reviewed.

The opinion states an hypothesis framed by penologists that a spread of years between the minimum and the maximum terms facilitates rehabilitation by extending the period of supervision after parole is authorized. The

want of such "substantial spread" of years, standing alone and by itself, is not an adequate reason for reducing the minimum term of this sentence. In People v. Lillie, 79 Ill App2d 174, 223 NE2d 716, it is persuasively stated that adequacy of punishment should be the factor establishing the minimum sentence, while the maximum term is to be derived from the court's estimate of the time required for successful rehabilitation. Upon this record, it would be difficult to argue that a sentence of 4 to 10 years was excessive under the established standards. The stated hypothesis is not a valid test here.

In People v. Jones, 92 Ill App2d 124, 235 NE2d 379, cited in the opinion, and in Lillie quoted at length in Jones, the court was concerned with minimum sentences considered excessive in the light of the facts of the offense, and the background and record of the defendant. It is strained to project these opinions as authority for proceeding via the stated hypothesis in this case.

Anent the citation of the tentative draft, Standards Relating to Sentencing Alternatives and Procedures, prepared by the American Bar Association Project, the views expressed therein are directed to a statutory structure of standards deemed desirable within which judicial discretion is to be exercised. While an informed view may recommend the suggested standards, our Legislature has not yet provided such statutory structure for the guidance of the trial courts. Further, it is proper to note that the "minimum term" referred to in the cited tentative draft differs in definition from the statutory definition in our Code, i. e., in the former it is used ". . . . to designate the earliest time when discretion can be exercised in favor of parole."