People of the State of Illinois, Plaintiff-Appellee, v. Samuel Glasgow, Defendant-Appellant.

Gen. No. 54,216.

First District, First Division.

May 25, 1970.

82

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard S. Rosen, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a jury trial defendant was convicted of the offense of burglary and sentenced to the penitentiary for a term of five to ten years. On appeal he contends that (1) he was not proved guilty beyond a reasonable doubt; (2) his Constitutional rights were violated in that he was indicted under an improper section of the Criminal Code; and (3) the sentence imposed was excessive.

On the afternoon of April 9, 1968, at about 1:30, Michael Hoke, a Chicago police officer, found a broken grille above the rear exit of the Elmore Shoe Store, Inc., at 916 East 63rd Street. The bars in front of the transom were broken, and the window had been knocked out. Officer Hoke testified that he climbed up the iron grille and looked inside the store, where he saw a man and a boy. He told them to come out, but they didn't. He and another officer then knocked a board off the washroom door and crawled in. There were shoes strewn all about in the rear of the store—men's shoes mostly. After an extensive search of the store, they found defendant and a juvenile lying up against a basement wall. Defendant told Hoke that he was in the basement hiding because of all the shooting going on at 63rd Street, and he didn't want to get hurt. The officers placed him under arrest and handcuffed him. On his feet he had a new pair of shoes, which were taken from him and inventoried. Hoke found no old shoes in the basement. On cross-examination he said he was working in the riot area and considered the things occurring as looting. When he placed his flashlight on Glasgow, he saw nothing in his hand.

Mrs. Gertrude Wallace, the store manager, testified that when she and two employees left the store on April 8, 1968, it was properly locked and nothing was broken. The store had been locked due to the riots that had been occurring in the neighborhood the previous day. She did not know Glasgow, and he did not have permission to be in the store at the time of his arrest. She identified the shoes Glasgow was wearing as a brand sold in the store.

Defendant Glasgow testified that he was walking through the alley behind the shoe store when he was approached by a man who offered to sell him a new pair of shoes for $5, and he bought them. He saw some men, women and children coming out of the shoe store and was curious as to what they were doing. He admitted entering the store and had seen the police arrive.

On appeal, defendant's original brief stated the issues presented for review were: "The defendant was not proved guilty beyond all reasonable doubt. If the Defendant is guilty his sentence should be reduced." A supplemental brief filed on behalf of defendant states that the issue presented for review is: "Whether a defendant charged with burglary instead of looting during a riot has been deprived of the Federal Constitutional guarantee of equal protection of the laws and the State Constitutional guarantee that the punishment shall be proportionate to the offense."

Initially considered is the contention of defendant in his original brief that he was not proved guilty beyond a reasonable doubt of burglary, the offense for which he was indicted and convicted. Defendant asserts that his testimony shows that "he admitted being in the shoe store. He was going through an alley and encountered a man who had these shoes and offered to sell them for $5, and defendant said he would buy them, which he did. He said they were too big, but they were better than the ones he had. Then he went into the store and tried to hide because of the shooting going on and because he did not want to get hurt. Then he testified he did not intend to take anything from the store. He said he thought the place was out of business. He went in through the window which was open."

Defendant argues that the evidence for the State was lacking in that the complaining witness did not see defendant enter the store or take anything and could not say that the pair of shoes taken from defendant was a part of the merchandise of the shoe store; also, Officer Hoke did not see defendant take any shoes from the store and put them on his feet, nor were any old shoes found in the basement.

Defendant maintains that "the gravamen of the crime of burglary is the felonious intent of the defendant at the time he enters." (People v. Glickman, 377 Ill 360, 364,

36 NE2d 720 (1941).) Defendant asserts that all the evidence is circumstantial and under the rules governing such evidence a conviction must meet the standards imposed by the court. Cited is People v. Magnafichi, 9 Ill2d 169, 137 NE2d 256 (1956), and People v. Dougard, 16 Ill2d 603, 158 NE2d 596 (1959), where it is said (p 607):

> "Although this court is committed to the doctrine that the jurors are the judges of the weight of the evidence in criminal cases, yet we will not hesitate to reverse a judgment of conviction resting upon circumstantial evidence that raises little more than a suspicion against the accused, and leaves a grave and serious doubt of his guilt."

■ We believe that the testimony of the State's witnesses, although circumstantial evidence, raised more than mere suspicion against defendant, and it was sufficient to convict him of the offense of burglary beyond a reasonable doubt. It was for the jury to believe or disbelieve defendant's story that he purchased his shoes from a man in the alley. In People v. Novotny, 41 Ill2d 401, 244 NE2d 182 (1968), it is stated (p 411):

> "We have recently stated: 'When the trier of facts renders a decision based upon credible and substantial evidence which is sufficient to convict, that verdict is not subject to question on review merely because the judge or jury chose to believe the consistent testimony presented by the State. . . .'
> . . . It is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of disputed evidence or the credibility of witnesses for that of the trier of fact who heard the evidence presented and observed the demeanor of the witness . . . ; and we will not reverse a criminal conviction where the evidence is not so improbable as to raise a reasonable doubt of guilt."

Defendant next contends that "it is a violation of the Equal Protection Clause of the Federal Constitution and Article II, sec 11, of the Illinois Constitution to indict an individual under the general burglary statute when the alleged crime occurred during a riot, since the legislature has enacted a specific statute dealing with looting during times of less than normal security." In support of the contention that defendant should have been charged with "looting" rather than "burglary," defendant's supplemental brief states:

> "On April 4, 1968, Martin Luther King, Jr. was murdered. A riotous condition erupted in Chicago's black ghetto, and particularly on the city's south side. Individuals and mobs in outrage and fury sought vengeance, striking out blindly against the city. Amidst this cataclysm, the defendant, Samuel Glasgow, a Negro, was found with a juvenile in Elmore Shoe Company, Inc., 916 East 63rd Street, Chicago, on the seething south side. Samuel Glasgow was arrested and charged with burglary.

> "The question before this court is whether the defendant can constitutionally be indicted under the general burglary statute when the legislature has enacted a specific and subsequent statute dealing with looting during times of less than normal security. The burglary statute, Ch 38, Ill Rev Stats, Sec 19–1, provides in relevant part:

>> "(a) A person commits burglary when without authority he knowingly enters . . . a building . . . with intent to commit therein a . . . theft
. . . .

>> "(b) Penalty: A person convicted of burglary shall be imprisoned in the penitentiary for an indeterminate term with a minimum of not less than one year.

87

"Looting is set forth in Chapter 38, Ill Rev Stats, Secs 42–1, 42–2: [Approved August 3, 1967.]

" 'A person commits looting when he knowingly without authority of law or the owner, enters . . . upon any premises of another or enters any commercial, mercantile, business or industrial building . . . in which normal security of property is not present by virtue of a . . . riot, mob, or other human agency, and obtains or exerts control over property of the owner.'

"42–2: 'A person convicted of looting shall be imprisoned in a penal institution other than the penitentiary for not less than 6 months and not more than one year or in the penitentiary for not less than 1 year and not more than 3 years.'

"The looting statute is a special statute promulgated by the legislature to deal with a specific situation. That the looting statute is a special law is evident: it comes into operation only when certain special events exist and the nature of the punishment is distinct from that of burglary. One of the preconditions necessary for the statute to apply is that a riot or like condition exist. The record shows that a civil disturbance existed in the area in which defendant was found on April 9, 1968."

Defendant's authorities on this point include Chicago Park Dist. v. Harris, 402 Ill 214, 83 NE2d 702 (1949), and People v. Hale, 55 Ill App2d 260, 204 NE2d 833 (1965). In Chicago Park Dist. v. Harris, the court stated (p 222):

"A special law [which is] a complete act within itself, operates to repeal pro tanto the general law to the extent of conflicting with it, or supersedes or constitutes an exception to the general law where

there is a conflict between it and the special enactment."

In People v. Hale, it is said (p 263):

"A particular enactment found in the statute is operative as against general laws relating thereto."

■ On the question of looting, the record here indicates that neither defendant nor his counsel interposed any objection in the trial court, before, during, or after the trial, based on the contention that defendant should have been indicted and tried for "looting" instead of "burglary." The asserted constitutional question is presented for the first time in this court. Objections of this kind must be initially raised in the trial court. (People v. Rohde, 403 Ill 41, 42, 85 NE2d 24 (1949), and People v. Brown, 13 Ill2d 32, 35, 147 NE2d 336 (1958).) In the absence of that issue being presented to the trial court by proper motions in the trial court and the rulings thereon preserved in the record, the question of whether defendant was erroneously indicted and tried for "burglary" instead of "looting" cannot be considered by this court. The indictment adequately charged defendant with the offense of burglary and at the trial for that offense the evidence was sufficient to prove him guilty beyond a reasonable doubt.

Defendant finally contends that the sentence imposed was excessive. He notes that the only property stolen was a pair of shoes, no weapon was involved, and there was no injury to anyone. Also, there was no evidence whatsoever that defendant entered the premises by force. Authorities cited include People v. Lillie, 79 Ill App2d 174, 223 NE2d 716 (1967); People v. Marshall, 96 Ill App2d 124, 238 NE2d 182 (1968); and People v. Jones, 92 Ill App2d 124, 235 NE2d 379 (1968).

The State argues that the time of a sentence for burglary is not based upon property loss, and defendant

was not sentenced for stealing small items but rather for the commission of a burglary, and "the sentence is not too severe, as this is Glasgow's eighth conviction, as well as his fifth felony conviction."

Imposition of sentence is peculiarly within the discretion of the trial court. Before a reviewing court will interfere, it must be manifest from the record that the sentence is excessive and not justified by any reasonable view which might be taken from the record. People v. Hobbs, 56 Ill App2d 93, 99, 205 NE2d 503 (1965).

Here, defendant's conduct and his previous record indicate that defendant's rehabilitation seems doubtful, and the primary concern here should be the protection of the public from defendant's proclivities. However, in spite of the character and propensities of the defendant and the chances of reform, after considering the nature of the offense and the attendant circumstances here, we believe that the instant record indicates that this is a proper case for the exercise of the power "to reduce the punishment" imposed by the trial court. Rule 615(b)(4), Illinois Supreme Court Rules. See also, People v. Marshall, 96 Ill App2d 124, 238 NE2d 182.

For the reasons given, defendant's conviction of burglary is affirmed and defendant's sentence is reduced to a minimum of two years and a maximum of five years in the Illinois State Penitentiary. As modified the judgment of the Circuit Court is affirmed.

Judgment modified and affirmed.

BURMAN, P. J. and ADESKO, J., concur.