THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. HENRY LAMPLEY, Appellant.

(No. 70-162;

Fifth District—September 7, 1971.

MORAN, J., dissenting.

Morton Zwick, Director of Defender Project, of Chicago, (Kenneth L. Gillis, of counsel,) for appellant.

Robert H. Rice, State's Attorney, of Belleville, for the People.

Mr. JUSTICE CREBS delivered the opinion of this court:

On a plea of guilty to theft of an automobile the circuit court of St. Clair County sentenced the defendant, Henry Langley, to the penitentiary for a term of not less than eight nor more than ten years. The sole issue presented on review is whether such sentence was so harsh and excessive as to require a reduction under the authority of Rule 615 (b) (4), Illinois Supreme Court Rules.

At defendant's hearing on his application for probation it was determined that he was 48 years of age and that he was on parole at the time of his present offense. He had been previously convicted on several occasions for similar offenses and had received a one year sentence in 1954, two years for stealing in 1957, five to ten years for burglary and larceny in 1958, and six to ten years in 1964. Other than statements by counsel that defendant had not been convicted of any crimes of passion or violence and that he had served four years in the armed forces, no evidence in mitigation was offered.

Defendant contends, (1) that the sentence itself violates the principle of indeterminacy and therefore the minimum term should be reduced, (2) that the theft of an eight year old car is so close to a misdemeanor in terms of value that the entire sentence was inappropriate.

Defendant's argument on the principle of indeterminacy is based on the cases of *People v. Scott*, 117 Ill.App.2d 344, and *People v. Jones*, 92 Ill.App.2d 124. In these cases notice is taken of the theory that to preserve the principle of indeterminacy a court should not impose a minimum sentence which exceeds one-third of the maximum. The theory is premised on the reasoning that a spread of years between the minimum and maximum terms permits an earlier parole, if warranted, and yet retains control and guidance for a further period of time which can be helpful in rehabilitation. We subscribe to this theory but even as stated in Scott it can be considered only as a guide and not as a hard and fast rule. Sentencing is a difficult task requiring the exercise of

discretion based upon the facts of an individual case. It cannot, and should not, be subject to an arbitrary application of a simplistic mathematical formula. Here defendant has been convicted of a number of similar offenses and has received and served substantial sentences. He has shown no inclination to rehabilitate himself, nor has supervision on parole had any beneficial effect as indicated by the fact that he was on parole even at the time of his present offense. But defendant argues that a prior criminal record does not automatically mean that an offender is beyond rehabilitation. However true this statement may be in the abstract, it is irrelevant here. Defendant has demonstrated a remarkable propensity to commit the same type of offense over and over regardless of the penalty imposed and whether or not under parole and subject to supervision. Without some evidence of an effort to rehabilitate himself or even an expression of a desire to do so it can hardly be concluded that he will change his habits at this particular point in time. Under these circumstances we find that the lack of a substantial spread of years between the minimum and maximum of the sentence imposed is not of itself an adequate reason for reduction of the minimum term.

 Finally, defendant contends that the entire sentence was inappropriate, that it was too harsh for the crime committed in that the theft involved an 8 year old car that was not worth much more than $150. He cites *People v. Marshall,* 96 Ill.App.2d 124 and *People v. Glasgow,* 126 Ill.App.2d 82, in support of his argument. In *Marshall* the defendant was convicted of an $8, unarmed, non-violent robbery and in spite of his prior record his sentence was reduced from a term of 5 to 12 years to 3 to 6 years. In *Glasgow* the conviction was for burglary in which the defendant obtained a pair of shoes and though defendant had a substantial prior record his sentence was reduced from a term of 5 to 10 years to 2 to 5 years. We have no quarrel with these cases, but neither do we believe that they should be determinative of the case before us. Here defendant stole an automobile, not a late model but nonetheless probably just as essential to the owner as a new model would be to its owner. As we have recently reiterated in *People v. Dodd,* Agenda 71-58, (Ill.App.2d), the authority of a reviewing court to reduce a sentence should bet applied with considerable caution and circumspection. (*People v. Taylor,* 33 Ill.2d 417); and the burden of presenting mitigating circumstances in a record falls upon a defendant and it is he who must make a substantial showing in order to justify a reduction of sentence on review. (*People v. Nelson,* 41 Ill.2d 364). Here we find a total absence of any mitigating circumstances tending to confirm the possibility of rehabilitation, and in recognizing the need to adequately punish defendant for his crime and to safeguard the public from further

offense of a similar nature, we find the sentence imposed by the trial court was proper.

The judgment of the circuit court of St. Clair County is affirmed.

Judgment affirmed.

JONES, J., concurs.

Mr. JUSTICE GEORGE J. MORAN dissenting:

The majority disregards our opinion in *People v. Lillie*, 79 Ill.App.2d 177, which was authored by a former member of this court, wherein we said at ages 177, 178 and 179:

" * * * We are, however, also aware of the constitutional provision that all penalties shall be proportioned to the nature of the offense (Article II, Section 11, Constitution of Illinois), and what purposes, hopefully, are to be achieved by the imposition of punishment for a criminal offense. People v. Brown, 69 Ill.App.2d 447, 208 N.E.2d 629; People v. Evrard, 55 Ill.App.2d 270, 204 N.E.2d 777.

'It is generally true that rehabilitation is best achieved under a system which gives great discretion to the parole authorities.' (People v. Brown, supra.)

It is also true that the courts, by exercise of the power to fix minimum and maximum punishments within the limits provided by the Criminal Code, *share with the parole authorities the responsibility for appropriate and effective implementation of the penal statutes.*
* * *

The purposes sought to be achieved by the imposition of sentence are adequate punishment for the offense committed, the safeguarding of society from further offenses, and the rehabilitation of the offender into a useful member of society. People v. Brown (supra), People v. Evrard (supra). *Adequacy of the punishment should determine the minimum sentence, with the maximum dependent upon the court's divination as to the length of time required to achieve rehabilitation.*
* * *

Advances in the fields of psychology, psychiatry and sociology have contributed to a greater understanding of the motives underlying the commission of criminal offenses, and the techniques and methods which are of value in the rehabilitation of offenders. The hope of *earlier release* is a *great incentive* to a prisoner to participate in the educational and rehabilitation of programs provided in modern penal institutions. *Excessive minimum sentences, imposed by the courts may defeat the effectiveness of the parole system by making mandatory*

*the incarceration of a prisoner long after effective rehabilitation has been accomplished.*

Inherent in the parole system is the risk of recidivism, but an enlightened society has long since rejected the medieval concept of punishment which imposed the death penalty for crimes now categorized as petty offenses. Society's safeguard against recidivism is the power of the parole authorities to terminate the conditional release and return the offender to prison. *A lengthy maximum sentence is not so likely to impede the operation of the system because the prisoner, although subject to parole supervision, is not mandatorily confined.*" (Emphasis added.)

The *Lillie* opinion has been quoted extensively by the courts of review in this state as a wise dissertation on the modern law of sentencing with due regard for the proper position of the courts in the sentencing process. This court quoted Lillie with approval in *People v. Swafford*, 89 Ill.App. 2d 176, and then said at 179: "The general purposes of the criminal code as set forth in chapter 38, section 1—2 are to prescribe penalties which are proportionate to the seriousness of the offense and which permit recognition of the rehabilitation possibilities among individual offenders, and to prevent arbitrary or oppressive treatment of persons accused or convicted of offenses."

We further stated in Swafford that the sentence we imposed after modification of the trial court's sentence was one that was proportionate to the offense committed and gave a great deal of discretion to the parole authorities.

In *People v. Jones*, 92 Ill.App.2d 124, Justice Drucker, speaking for the First District, Fourth Division, also quoted *People v. Lillie* and went on to say at page 128: "In American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures (Tentative Draft 1967) it was recommended to the legislatures at page 21 that: 'In order to preserve the principle of indeterminacy, the court should not be authorized to impose a minimum sentence which exceeds one-third of the maximum sentence actually imposed.' We believe these principles to be sound."

In *People v. White*, 93 Ill.App.2d 283, Justice Craven of the Fourth District, speaking for a divided court, quoted Lillie with approval and went on to say at 288-89:

"* * * In addition, this sentence offends against the legislative mandate that all sentences be indeterminate, and an indeterminate sentence necessarily presupposes an opportunity for release determination under the Sentence and Parole Act. A sentence of not less than four nor more than five years effectively mitigates against that philoso-

phy. What should be the spread between a minimum and a maximum sentence cannot be determined with mathematical certainty, nor indeed should the spread be subject to a precise and rigid formula necessarily applicable to all cases.

That there should be a substantial spread is obvious. We find ourselves in agreement with the general philosophy as expressed in People v. Brown, 60 Ill.App.2d 447, 208 NE2d 629 (1st Dist 1965); People v. Jones, 92 Ill.App.2d 124, 235 NE2d 379 (1st Dist 1968). See also 1966 U Ill L Forum 523, et seq., and ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternative and Procedures 21 (Tent Draft 1967)."

In *People v. Freeman*, 113 Ill.App.2d 7, Justice Lyons, speaking for the First District Appellate Court, Second Division, quoted Lillie with approval and went on to say at 15: "* * * Our legislature has indicated that it favors all sentences to the penitentiary to be for an indeterminate term. Ill. Rev. Stats. (1965), c. 38, Par. 1—7(e). In People v. Jones, 92 Ill.App.2d 124, 128, 235 NE2d 379, 381 (1968), the court recognized as a sound guideline, in implementing this principle of indeterminacy, that the trial court should not be authorized to impose a minimum sentence which exceed one-third of the maximum sentence actually imposed. Furthermore, in People v. Lillie, 79 Ill.App.2d 174, 179, 223 NE2d 716, 719 (1967), the court noted that excessive minimum sentences could defeat the effectiveness of the parole system by making mandatory the incarceration of a prisoner long after effective rehabilitation has been accomplished and by destroying any incentive a prisoner might have to participate in the educational and rehabilitation programs provided in modern penal institutions."

In *People v. Scott*, 117 Ill.App.2d 344, Justice Craven, speaking for the Fourth District, quoted *Lillie* with approval and had this to say at 350: "The minimum sentence measures parole eligibility. The maximum sentence measures the length of time that the inmate may be incarcerated, even without favorable parole consideration. When there is a substantial spread between the minimum and the maximum of a sentence the inmate in the institution can be directed toward academic or vocational training, and favorable prospective parole consideration operates as quite a catalyst. The existence of a substantial spread between the minimum and the maximum ensures the availability to the defendant of supervision after incarceration. The principle of indeterminacy of sentence necessarily leaves to the professionals in the behavioral sciences the determination of the optimum date for release. The court, in fixing the maximum, determines the total length of possible incarceration."

I would not dismiss *People v. Glasgow*, 126 Ill.App.2d 82 and *People*

*v. Marshall,* 96 Ill.App. 23 124, with a stroke of the pen as the majority does. Instead, I would follow them because in each of these cases the appellate court considered the petty nature of the offense in reducing the sentence, even though the defendants in both cases had prior records as bad, if not worse, than the defendant in the present case. In other words, the decisions in these cases made the punishment fit the crime. A most recent opinion, *People v. Pantoja,* —— Ill.App.2d —— (1st Dist.) written by Justice Burke, one of the most distinguished jurists in this state, recognized the emphasis that should be placed on rehabilitation by reducing a burglary sentence of ten to 25 years to five to 15 years in the penitentiary, even though the defendant had prior convictions for malicious mischief and burglary, remarking that the trial court sentence for all practical purposes negated the possibility of defendant's rehabilitation.

The Tentative Final Draft of Illinois Unified Code of Corrections prepared by the Council On The Diagnosis and Evaluation of Criminal Defendants established by the General Assembly of Illinois, drafted a correctional code for submission to the Illinois Legislature recommending, among other things, that the sentencing court "shall not impose a minimum period which is in excess of one-third of the maximum sentence imposed by the court." Article 540-1.

The new Illinois constitution approved by the people of Illinois to take effect July 1, 1971 provides within its Bill of Rights that "(a)ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the defender to useful citizenship." Ill. Const., Article I, Section 11 (effective July 1, 1971). If the goals of the new Constitution are to be carried out, meaningful review of trial court sentences is essential because this is the only way to create a stable body of state law on this subject.

The majority opinion in this case completely disregards our statement in Lillie that all punishment should be proportioned to the nature of the offense. The punishment in this case does not fit the crime. Eight to ten years in prison is a long, long time to serve for stealing an eight year old car, the value of which could hardly have been more than the $150.00 required to take the crime out of the realm of petty larceny which carries a maximum sentence of one year. In other words, for committing a theft which to all intents and purposes amounted to petty larceny, he is given about as harsh a sentence as could be meted out for grand larceny.

The majority opinion in this case does not effectively share with the parole authorities the responsibility for appropriate and effective implementation of our penal statutes as we said it should in Lillie because the

trial court and the majority in this appeal have arrogated to themselves the sole decision that this defendant is beyond rehabilitation.

The majority opinion in this case does not recognize that rehabilitation is best achieved under a system which gives great discretion to the parole authorities as we did in Lillie, for under this sentence they have little or no discretion to deal with this defendant.

The majority opinion in this case does not recognide that there have been advances in fields of psychiatry, psychology and sociology and that there are new techniques which are of value in the rehabilitation of offenders as we did in Lillie. When delivering the Louis D. Brandeis Lecture for 1960, David L. Bazelon, a renowned jurist and criminologist said: "In the administration of the criminal law today, we desperately need all the help we can get from modern behavioural scientists—before trial, and after trial. The law by itself, without these workers, is cast in the hopeless role of a socially isolated, traditional bulwark against the welter of personal, social and economic forces which create today's problem of crime and the so-called criminal population."

The majority opinion does not recognize that the hope of an earlier release is a great incentive to a prisoner to participate in the rehabilitative programs provided in modern penal institutions and has removed from him that incentive.

The majority opinion completely disregards our statement in Lillie that excessive minimum sentences may defeat the effectiveness of the parole system.

The majority opinion ignores the rationale of Lillie, Jones, White Freeman and Scott and the intent of our legislature that all sentences should be indeterminate.

Justice Bazelon's words in 1960 were prophetic because in the past few years we have seen a great effort by the State of Illinois and other states to rehabilitate those incarcerated in our penal institutions through techniques developed by the behavioral scientists. At one of the Annual Illinois Judicial Conferences we heard the Director of the Department of Corrections for the State of Illinois, a behavioral scientist, tell us that the principal object of the Department was to alter the behavior of the inmates so that they could function when they returned to society. Great strides are now being made by behavioral scientists in treating the mentally ill, in aiding children with learning disability and in altering the behavior of criminals. James V. McConnell, *Criminals Can Be Brainwashed—Now*, Psychology Today, 14 (April, 1970); Milton Rokeach, *Persuasion that Persists*, Psychology Today, 68 (Sept. 1971); Roger W. McIntire, *Spare the Rod, Use Behavior Mod*, Psychology Today, 42 (Dec. 1971); M. Hindelang, *A Learning Theory Analysis of The Cor-*

*rectional Process,* Issues in Criminology, 43 (Winter 1970); J. D. Grand, *Delinquency Prevention Through Participation in Social Change,* Criminal Law Bulletin, 530 (July-August 1971).

Most behavioral scientists claim that all criminal behavior has to be learned, and what can be learned can be unlearned. In other words, they now claim that recidivism can be treated. However, if the courts remove their rehabilitation tools, we will never know whether their claims are valid.

It is no secret that disparity of sentences, long minimum sentences and no substantial spread between the minimum and maximum sentence, make the rehabilitation of prison inmates much more difficult. The sentence the majority now affirms has all of these vices.

I dissent.