HAROLD E. McCALLISTER, Plaintiff-Appellant, *v.* JULIO C. delCASTILLO, M.D., Defendant-Appellee—(BLESSING HOSPITAL, Defendant.)

(No. 12338;

Fourth District—April 25, 1974.

Jay H. Janssen, of Peoria, for appellant.

R. P. O'Connell, of Quincy, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

On January 15, 1970, defendant-appellee, Dr. Julio C. delCastillo, a neurosurgeon, performed surgery upon the left temporal area of the brain of plaintiff-appellant, Harold E. McCallister, for the purpose of removing a tumor. Plaintiff's post-operative recovery was unsatisfactory, and on January 24, 1970, the defendant again performed brain surgery and discovered that a small piece of cotton, approximately 2-cm. in diameter had been left in the site of the original surgery. The piece of cotton had blocked cerebral spinal fluids resulting in obstruction of the left ventricle and caused internal hydrocephalus.

Plaintiff brought suit against Dr. delCastillo claiming that the initial operation was negligently performed, and that as a result of the failure of defendant to remove the piece of cotton from plaintiff's brain during the course of the operation he had suffered permanent injury.

The case was submitted to a jury which was unable to arrive at a verdict. Subsequently the trial judge directed a verdict for the defendant and this appeal ensued.

The issue presented invokes consideration of the following familiar proposition: "* * * verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria and Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504.

There is no dispute that the defendant performed the surgery in question. There is no dispute that during the operation he inserted, one at a time, balls of cotton into the surgical site and that the piece of cotton in question became detached from a larger piece and was left in plaintiff's brain where it was discovered, and from which it was removed, on the occasion of the second operation.

The defendant was called as an adverse witness and was asked, "Now, leaving a fragment of cotton in a patient's skull is not standard operating procedure, is it?", and responded, "Under certain circumstances you might have to. Not in this case, certainly, not in this case * * *." The defendant further testified that "This was an accident of the surgical procedure, certainly not done on purpose." Counsel then asked, "I understand that. I understand that you didn't do it on purpose. That was never the point. Talking about it being something that you should not have done?" to which the Doctor responded, "Yes sir, it should not happen."

Dr. Anthony J. Raimondi, a neurosurgeon, testified in behalf of the plaintiff and on direct examination the following questions and answers occurred:

"Q. Should it have been removed from the patient's skull in toto?

A. Certainly.

Q. And leaving a portion of that cotton ball in the patient was something that should not have been done on the 15th of January, 1970?

A. Yes."

The doctor also testified that it was standard operating procedure to use cotton balls in this type of surgery (p. 288, vol. III).

During the defendant's cross-examination of Dr. Raimondi, the following questions and answers appear in the record:

"Q. Let's assume that you're ready to close up after doing all these good things, and you have your lighted instrument there and you're working in a cavity about like that, three inch cavity, I think it was described, that was left after the tumor was removed, and you thoroughly irrigate the whole operative field, and you remove every cotton ball you put in there, and upon visual inspection you don't see a little piece of a fluffy that someway, somehow, who knows, got out of the operative field.

How would you describe that occurrence as a neurosurgeon?

A. Well, I think you know, and I put it in writing, I considered this surgical accident. Actually, it's occurred.

Q. Well, assuming that this procedure that I've just described, assume Dr. del Castillo did that, did he do anything which in your opinion was negligent or careless, assuming these facts?"

At this juncture there was an objection by the plaintiff that the last question invaded the province of the jury since it went to the ultimate issue. The trial judge overruled the objection and the following appears in the record:

"WITNESS RAIMONDI: I think it's difficult for me to—I'm not walking on ice, and legs down one at a time, and I'm not attempting to skirt the question—but it's difficult for me to address myself directly to negligence without knowing whether he was counting his fluffies as he put them in and counting them as he put them—as he took them out, which is what we do.

Q. Let's assume for purposes of our involvement here right now that all fluffies that were put in were accounted for, that a whole fluffy wasn't left in there. I just want you to assume that. I know you don't know for sure.

A. I don't.

*He was neglectful in getting all of the fluffies out. Now, does that impart to you the judgment of negligence? It does to me.* So that it was neglected, all of the cottons were not taken out. (Emphasis added.)

Q. Right. They were not.

Let's assume that all of the fluffies as near as anybody in that operating room—.

A. Were out.

Q. [Continuing]—were out, and that what we're talking about is not a fluffy, as such, but a small part, a fragment of a fluffy,

and assume that we're in the ventricle, the left ventricle, assume the patient is on his right side, head slightly tilted to the back, posterior, and all fluffies, as such, are out, the man is thoroughly syringed out and those lights are in there and you look around and there is nothing to be seen.

Is that what you mean by a surgical accident in your report?

A. Oh, in my report, leaving the fluffy in, a part, is a surgical accident. Clearly, it's a surgical accident. And I think what you're asking me is, the surgeon who is in there, who has the responsibility for putting it in and taking it out, you know, and the hole is three inches across. Now, that's what we're agreeing to.

Q. Well, just assuming that.

A. That's what we know. We also know that the fluffy is one inch across to a half inch across, that is, it occupies between a sixth and a third the size of the hole.

Q. In the syringing portion.

A. That's a surgical accident.

Q. Right.

You've read his operative report. Have you not?

A. Yes.

Q. In your opinion did he perform his surgical procedure in standard, customary, recognized, workmanlike, neurosurgeon-type manner?

A. Yes. Surely."

At the time of allowing the defendant's motion for directed verdict the trial judge reversed his ruling, made during the course of the trial, and struck the following answer given by Dr. Raimondi:

"He was neglectful in getting all of the fluffies out. Now, does that impart to you the judgment of negligence? It does to me. So that it was neglected, all of the cottons were not taken out."

In making this ruling the trial judge stated that he relied upon *Wawryszyn v. Illinois Central R.R. Co.*, 10 Ill.App.2d 394, 135 N.E.2d 154, and particularly the following language from that opinion: "We believe it can be said to be the law of this State that neither an expert nor a non-expert witness may give his opinion on an ultimate issue in the case * * *. The question of defendant's negligence was clearly an ultimate issue in this case."

We agree that Dr. Raimondi's answer did indeed constitute an opinion on the ultimate issue in the case. We also note that his prior statement to the effect that he considered this to be "surgical accident" could be said to be an opinion on the ultimate issue in the case.

It also appears that Dr. Raimondi's definition of a "surgical accident" is subject to interpretation. He testified:

> "Now, let me speak to you only from the point of view of a surgeon. Really all I'm saying. During the operation, as you proceed, you encounter a series of events. Some of the events are routine and some of the events aren't. I referred to this as a surgical accident. Another surgical accident, a blood vessel that breaks and you have to stop it. And another surgical accident is a changing breathing or cardiac arrest. So that during the operative procedure, these events occur.
>
> &ast; &ast; &ast;
>
> But what happens is that maybe something else occurs that may take your time for a great period of time, may take your attention for just a moment or it may take your attention for five or ten minutes to deal with. Constantly in the unknown as we go ahead. It's not a programmed procedure."

It is a fair reading of this testimony that he was defining as a "surgical accident" any unexpected or unanticipated event occurring during the course of an operation. We do not equate this definition as being inconsistent with the view that the unanticipated event involved might have been negligently caused or created.

Dr. Ken B. Smith, Jr., a neurosurgeon, testified that it was accepted proper surgical technique to use cotton balls to control bleeding in the type of surgery performed on the plaintiff. He further testified that he thought it unlikely that the piece of cotton could have remained in the ventricle of the brain because of the amount of irrigation done by Dr. Raimondi. In his opinion the most likely explanation was that the cotton became a part of a blood clot and was invisible for that reason.

■■ The striking of that portion of Dr. Raimondi's testimony which dealt with the ultimate issue of defendant's negligence was error. There was no question as to *what* had occurred. The stricken testimony was directed to whether or not what had ocurred constituted negligence on the part of defendant. Neurosurgery involves techniques and procedures clearly not within the knowledge and understanding of the average person, and Dr. Raimondi's testimony was admissible. *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.*, 49 Ill.2d 118, 273 N.E.2d 809.

In the opinion of Dr. Raimondi, the defendant was negligent; in defendant's opinion, and in that of Dr. Smith the defendant was not negligent. The evidence raised an issue of fact to be resolved by the trier of fact. Under the evidence and favorable inferences therefrom, reasonable men could have differed as to whether the defendant was negligent in not

removing the piece of cotton. *Piacentini v. Bonnefil,* 69 Ill.App.2d 433, 217 N.E.2d 507.

■■ We therefore reverse and remand for a new trial.

Reversed and remanded.

SMITH, P. J., and CRAVEN, J., concur.