THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM CONWAY, Defendant-Appellant.

(No. 55173; )

First District—December 7, 1971.

Gillis & Rimland, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Richard Jalovec, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

On a trial by jury defendant was found guilty of aggravated battery and sentenced to serve three years on probation, the first ninety days thereof to be served in the House of Correction. On appeal he contends: (1) that the trial court erred in admitting into evidence testimony concerning a telephone conversation impeaching a defense witness and that even if the testimony was proper, the court erred in not giving a limiting instruction to the jury concerning that testimony; (2) that the trial court erred in allowing the prosecutor to make improper insinuations concerning a statement made by defendant; and (3) that the condition of the defendant's probation that he serve ninety days in the House of Correction defeats the purpose of the provision for probation. The facts follow.

Joseph Proctor was the principal witness for the State. He was a passenger in a car being driven east on 111th Street by Thomas Dunne. Defendant Conway was a passenger in a car also going east. That car pulled alongside the Dunne car and some of its occupants shouted obscenities at the passengers in the Dunne car. Dunne pulled away from the car in which defendant was riding, only to be pursued by it until finally when Dunne stopped for a red light at Kedzie Avenue, defendant and three other men left their car and approached Dunne's car. Upon seeing the four approach, Proctor alighted from Dunne's car and met the defendant. Defendant swung at Proctor with a razor blade carton opener, knocking him to the ground and slashing his face with this weapon. The other occupants of both cars separated the two men and Proctor was taken to the hospital by his friends. We proceed to a consideration of defendant's first point—that the court erred in admitting evidence concerning a telephone conversation impeaching the defense witness William Frett.

At the close of defendant's case counsel for the defense was allowed to read the jury a transcript of the testimony of Frett, who was also a passenger in the car in which defendant was riding. He was questioned and cross-examined at a preliminary hearing held in Branch 49 of the First Municipal District. The substance of his testimony was that Proctor was on top of defendant during the fight and was pulled off by bystanders. At the time of trial Frett was serving with the armed forces in Vietnam. To impeach his testimony the State in his absence was permitted to pre-

sent the testimony of Detective John Bueger. Bueger testified that on the day following the alleged battery he had a telephone conversation with William Frett, who stated to him that defendant was pulled off Proctor. Defendant contends that the trial court erred in admitting into evidence the testimony of a telephone conversation when the voice was not recognized by the witness and where the witness did not make the call, but rather received it. Since Bueger received the call from one who identified himself as Frett, defendant argues that a mere statement of identity by a person calling on the telephone is not in itself sufficient proof of identity *in the absence of corroborative evidence.* (*Nestor Johnson Mfg. Co. v. Goldblatt,* 265 Ill.App. 188.) In the instant case the necessary corroborative evidence was presented by the State in the testimony of Detective Bueger as to what had occurred prior to the telephone conversation.

Bueger testified that he went to the Frett home and when he was told by Frett's father that William was not at home, he left his card and asked that William call him when he came in. Later that day Bueger received a call. The caller said he was William Frett, that his father had told him to call Bueger and he asked for Bueger by name. The conversation in question then occurred.

 If one uses a telephone in his place of business in order to communicate with another, the fact that the voice was not recognizable to the recipient of the call does not render the conversation inadmissible, but it is a question of fact for the jury to say whether or not the proof identified the caller. (*Rogers Grain Co. v. Tanton,* 136 Ill.App. 533.) In a criminal case telephone conversations are competent evidence provided the person with whom the conversation was had is established by direct evidence or facts and circumstances. *People v. Turner,* 82 Ill.App.2d 10, 226 N.E.2d 667; *People v. Nichols,* 378 Ill. 487, 38 N.E.2d 766. See also *State v. Silverman* (1934), 148 Or. 296, 36 P.2d 342; *Van Riper v. United States* (2nd Cir. 1926), 13 F.2d 961.

██ In the case last cited the opinion written by Mr. Justice Learned Hand stated, at p. 968 that if "* * * a man were to write a letter properly addressed to another and were to receive a telephone call in answer to the letter, professing to come from the addressee and showing acquaintance with the contents of the letter, * * *" that would be sufficient identification of the caller. The case at bar is similar to the example used by Justice Hand. He contemplated a letter preceding the telephone call, and in the instant case we have a visit in person by Officer Bueger prior to the return call in question. In either case a showing of knowledge of the contents of the letter or circumstances of the visit is

sufficient identification of the caller to warrant admission of the conversation. The trial court properly admitted Bueger's testimony.

■■ Defendant next argues that the State's attempt to impeach the testimony in the transcript was unfair since the witness Frett was unavailable, could not be rehabilitated after impeachment and was fully cross-examined at the preliminary hearing. In support of that contention defendant cites several cases which prohibit the curtailment of cross-examination. In those cases the witnesses were available and willing to testify further. Here Frett was absent from the jurisdiction. Defendant argues that an impeached witness should be permitted the opportunity of rehabilitating himself and be given the opportunity of explaining prior inconsistent statements and he cites in support of his contention *People v. Hicks,* 28 Ill.2d 457, 192 N.E.2d 891. It was defendant, however, who first moved to admit testimony given by Frett at a preliminary hearing and that opened the door for the State to impeach it. By introducing the testimony, defendant invited action by the State and cannot now complain of the result. Had Frett been available, the State could have impeached his testimony by any of the procedural methods available. The evidence in question was properly admitted. See *Dunn v. People,* 172 Ill. 582, 50 N.E. 137.

■■ Defendant urges that even if the testimony of Detective Bueger was proper, error occurred when no instruction was given to limit the use of that testimony to impeachment only. If defendant desired instructions on that point, he should have offered them and requested the court to give them. A trial judge is under no duty to give instructions on his own motion. (*People v. Lindsay,* 412 Ill. 472, 107 N.E.2d 614; *People v. Davis,* 74 Ill.App.2d 450, 221 N.E.2d 63.) Since defendant offered no limiting instruction on evidence admitted for a certain or limited purpose, he cannot complain on appeal that the jury was not properly instructed. *People v. Walls,* 33 Ill.2d 394, 211 N.E.2d 699; *People v. Botulinski,* 392 Ill. 212, 64 N.E.2d 486.

■■ Defendant next contends that the trial court erred in allowing the prosecutor to make improper insinuations concerning a statement made by him (defendant). In open court the prosecutor asked witness Detective McNally about a meeting he had with defendant:

Q. "And did he in fact tell you about the incident?

A. Yes, he did.

Q. What, if anything, did he say?"

Defense counsel objected at that point and after an *in camera* conference the prosecutor withdrew the question. In the presence of the jury the prosecutor asked the witness:

Q. "Detective, after speaking with the defendant in the police station, what if anything did you do?

A. After speaking with Mr. Conway we charged him with aggravated battery."

The cases cited by defendant do not support his contention that the prosecutor conveyed to the jury improper insinuations concerning defendant. In *People v. Nuccio*, 43 Ill.2d 375, 253 N.E.2d 353, actual statements of misconduct were read into the record. Here nothing was stated or even implied because the key question was withdrawn. In *People v. Roth*, 19 Ill.2d 190, 166 N.E.2d 578, where the defendant was charged with conspiracy to harm another, the State put in evidence inferences that the intended victim of the conspiracy was murdered by the defendant's co-conspirators on a later occasion. Again there the record contained actual prejudicial testimony. *People v. Adams*, 1 Il.2d 446, 115 N.E.2d 774, heavily relied on by defendant is inapplicable here. In *Adams* a signed statement amounting to a confession was withdrawn by the State because it was not proved to have been voluntarily made. The State, however, used the statement to impeach the defendant. The Illinois Supreme Court reversed the conviction, holding the impeachment improper. Again the record clearly showed actual prejudicial testimony and references. Here there is no prejudicial testimony. All questions asked and answered were proper and the question which allegedly created an improper insinuation was withdrawn.

■■■ Defendant finally contends that the condition of his probation that he spend the first ninety days in the House of Correction defeats the purpose of probation and is an unfair sentence. This court has held that the power to change punishment should be exercised only when it is manifest from the record that the sentence is excessive and not justified by a reasonable view of the record. (*People v. Glasgow*, 126 Ill.App.2d 82, 261 N.E.2d 424.) In the case at bar defendant inflicted severe facial wounds with the razor blade instrument before described and it required over eighty stitches to close the wounds. Considering the viciousness of the crime, the defendant's sentence was lenient. The judgment is affirmed.

Judgment affirmed.

LEIGHTON, P. J., and STAMOS, J., concur.