THE STATE OF OHIO, APPELLEE, *v.* EARLEY, APPELLANT. █

(No. 507—Decided August 28, 1975.)

Mr. *James R. Scott,* prosecuting attorney, for appellee.
Mr. *David A. Ellwood,* for appellant.

DOWD, J. This appeal arises from a conviction of aggravated robbery and kidnapping where the victims were unable to identify the masked offender. The identity of the offender was the controversial fact issue at trial. The rulings of the trial court permitted the state to present its evidence and testimony, but restricted the defendant in attempting to present his defense of alibi and his claim that the offender was another person, Randy Shaver, the defendant's original accuser. The case does not involve the application of exclusionary rules fashioned by the United State Supreme Court to control the law enforcement efforts of the government. Rather, the case involves the right of both parties, the government and the defendant, to a fair submission of its evidence to the jury. We hold for reasons that we hereafter set forth that the trial court properly permitted the state a fair submission of its evidence to

the jury but improperly restricted the defendant, to his prejudice, in his right to a fair submission of his evidence. We reverse.

The critical questions concern the admissibility of the prior testimony of missing witnesses and the attempted impeachment of the prior testimony of one of the missing witnesses by the use of an alleged statement of the missing witness, written subsequent to the prior testimony given at the defendant's preliminary hearing.

The aggravated robbery and the accompanying kidnapping were committed at the Ranch Market in Cambridge in the middle of October 1974, at the midnight hour, as two women employees were closing the market. Following the successful robbery, in which cash, food stamps, two cartons of Winston cigarettes and the women's wallets were taken, the offender forced one of the women to accompany him a short distance beyond the market before releasing her with instructions to return to the market and call the police. The offender was not identified by the women employees, as he was masked and wearing coveralls. Both women identified the weapon used as a sawed-off shotgun.

The principal witnesses against the defendant on the issue of his involvement were Randy Shaver, Cindy Shaver, and Joyce Shaver (brother and sisters respectively). At the time of the offense, Cindy Shaver was living with the defendant, and Joyce Shaver was living with another man. Both couples lived in the same house in Cambridge. Randy Shaver lived with his mother several houses away, but he also spent considerable time at the house in which the defendant, Cindy Shaver and Joyce Shaver were living.

Some eight days following the robbery, Randy Shaver, a 16 year old juvenile, while being questioned by a Cambridge police officer in connection with several bad checks which he had passed, volunteered[1] that contraband from the robbery was in the home occupied by the defendant

[1] Both Randy and officer Young testified about Randy's original revelations concerning the robbery. An informant's fee to be paid Randy was discussed. An interrogation about bad checks, the robbery revelation and a discussion of informant's fee appear to have occurred sequentially.

and Cindy Shaver and further that the defendant had admitted the robbery to him. A search warrant was issued and members of the Cambridge Police Department were successful in locating the sawed-off shotgun; the coveralls worn by the offender; an empty carton of Winston cigarettes, which the women employees identified as having come from the Ranch Market; a silken mask used by the offender; and the two empty wallets belonging to the women.

The defendant was arrested pursuant to a warrant the day following the search. At a preliminary hearing conducted on October 31, 1974, Cindy and Joyce Shaver appeared and testified on behalf of the state. Their testimony incriminated the defendant.

At trial, neither Cindy nor Joyce Shaver were present to testify. The state requested the privilege of presenting their testimony pursuant to the provisions of R. C. 2945.49. The trial court conducted an extensive hearing outside the presence of the jury and thereafter permitted the state to introduce and have read to the jury the previous testimony of Cindy and Joyce Shaver taken at the preliminary hearing.

The defendant requested the opportunity to impeach the testimony of Cindy Shaver by the introduction of a letter, the substance of which constituted a retraction by Cindy Shaver of her testimony at the preliminary hearing with an explanation that she had incriminated the defendant to protect her brother Randy who was in fact responsible for the robbery.

The letter was alleged by the defendant to have been received by him while incarcerated in the Guernsey County jail awaiting trial. The trial court denied the defendant the right to use or to introduce the letter, ruling that it was impossible to lay a foundation for its introduction, due to the absence of the witness.[3]

The defendant's assignments of error follow:

---

[3]The defendant moved for the right to read the letter in impeachment of the testimony. The court overruled, stating:

"I don't see under the statute where any enlargement can be made for counter on it. This is at least under oath, has been testified to and it is under oath."

*Assignment No. 1*

"The Court of Common Pleas Erred in Allowing the Transcript of the Testimony of Joyce and Cindy Shaver Taken at the Preliminary Hearing to be read and the Evidence as the Defendant's Right of Confrontation was Denied."

*Assignment No. 2*

"Where the State of Ohio is Permitted by the Trial Court to Introduce the Testimony of Absent Witnesses the Defendant Should be Allowed to Introduce Impeaching Evidence Consisting of Written Statements and the Denial of Appellant's Request to do so is Error."

The use of prior testimony where the witness is unavailable is a vexing problem that continues to trouble trial and appellate courts. The United States Supreme Court has struggled with this subject repeatedly in recent years. The principles discussed in recent United States Supreme Court decisions include the application of the confrontation clause of the Sixth Amendment, the hearsay rule and its exceptions, and the concept of due process. In its most recent decisions, the Supreme Court has injected the new test labeled "Indicia of Reliability" in weighing whether the prior testimony of the missing witness is admissible.

At the outset, the testimony suggests the possibility that the offender was, as claimed by the defendant, Randy Shaver. The record clearly demonstrates that Randy Shaver first revealed the information about the robbery to the police and was accurate in his descriptions. It is obvious that he could have learned this information in only one of two ways: By being informed by the culprit, or by being the culprit himself. The testimony of the Shaver sisters at the preliminary hearing was that of very reluctant witnesses. It is conceivable that their reluctance was out of loyalty to the defendant. It is likewise conceivable that the reluctance was anchored in the knowledge that they were perjuring themselves in an effort to protect their brother. The subsequent disappearance of the sisters is also equivocal

Compounding the fact situation is the revelation that Randy Shaver was, at the time of trial, incarcerated and

charged as a juvenile for an armed robbery committed several months after the robbery of the Ranch Market.[3]

As a general rule, a witness can be impeached only upon the presentation of a proper foundation for the impeachment.[4] Stated in another way, the contradicting material, by way of oral or written statements, must first be put to the witness before the impeachment process can begin. However, presenting a foundation is impossible where the cross-examiner is confronted with the record of the former testimony of a missing witness and the impeaching information developed subsequent to the former testimony.

The question that emerges is whether it is error to deny the impeachment of the prior testimony of a missing witness where the impeaching information, be it an oral or a written statement, purports to have been given after the prior testimony.

The Ohio Revised Code and the Ohio Rules of Criminal Procedure provide no assistance. We find no reported decision in Ohio responding to this issue. While the Supreme Court of the United States has reviewed many cases recently on the subject of the use of former testimony, none discussed this issue.[5]

We first consider the second assignment of error. We find that it raises questions of due process, procedure, waiver and authenticity.

### Due Process

The due process discussion requires setting aside, for the moment, the issues of procedure, authenticity and waiv-

---

[3]Appellant's counsel claimed during oral argument that Shaver was permanently committed to the Ohio Youth Commission in connection with such robbery, and the claim was not rebutted.

[4]*Runyan* v. *Price* (1864), 15 Ohio St. 1; *Radke* v. *State* (1923), 107 Ohio St. 399.

[5]In *People* v. *Collup* (1946), 27 C. 2d 829, 167 P. 2d 714, the California Supreme Court ruled that "justice and fairness" compel one of two results, that the testimony at the former trial be excluded or that the impeaching evidence be admitted," when confronted with a similar case. See *People* v. *Conway* (1971), 3 Ill. App. 3d 69, 278 N. E. 2d 852, where the prosecution was permitted to impeach the former testimony of a missing defense witness when the alleged contradictory statements were made after the former testimony.

er and a recognition that the letter was written after the testimony of Cindy Shaver at the preliminary hearing. Additionally, if the jury had been presented with the letter and determined it to be authentic, the context of the letter would have impeached the testimony of Cindy Shaver, a critical state witness. Due process guarantees a defendant the right to a fair trial, nothing more and nothing less. Due process by incorporation also grants the defendant the Sixth Amendment right to confront witnesses against him. We find that neither the due process right to a fair trial, nor the due process right to confront one's accusers is granted a defendant when he is denied the opportunity to impeach a critical state witness for the lack of a prior impeaching foundation where such requirement is, through no fault of the defendant, impossible to establish. Stated affirmatively, we hold that a defendant has a due process right to offer testimony or evidence designed to impeach the testimony of a missing witness when the impeaching testimony or evidence originated after the former testimony was given. In passing, we note that the defendant was prevented from testifying about conversations with the missing witness allegedly held after the robbery. The testimony concerning the text of the conversations was apparently intended to establish his defense and to impeach the testimony of Cindy. Arguably, the defendant had an opportunity at the preliminary hearing to impeach her testimony concerning those conversations, and having had such an opportunity, he cannot be permitted to impeach her testimony at his trial, in the absence of a foundation established at the preliminary hearing. But apart from the issue of prior conversations with Cindy, the defendant had a due process right to offer impeaching evidence created after the preliminary hearing.

### Procedure

Given the due process right to offer such testimony, we next consider the procedure by which the testimony may be offered. For obvious forensic advantages, the defendant requested that the letter be read to the jury at the conclusion of the reading of the witness's former testimony. Under some circumstances, such a procedure might

be within the sound discretion of the trial court. However, impeaching evidence or testimony, in the absence of an admission, requires a witness who vouches for the authenticity of the evidence or testimony and is likewise subject to cross-examination. To merely read the letter to the jury would deny the opposing party the opportunity to challenge by way of cross-examination. Moreover, when the witness denies the alleged contradictory statement or document, the presentation of impeachment evidence must wait for the opposing party's next opportunity to offer testimony. In this case, the defendant, as the recipient of the letter, was the necessary witness to vouch for the letter. Thus, his right to offer and vouch for the impeaching letter must wait for the presentation of the defense case.

### Waiver

We next consider the argument that if the defendant had a due process right to the introduction of the letter, he waived same. The trial court's ruling that the defendant could not introduce Cindy Shaver's letter was made during the state's case. The defendant testified. His attempts to testify concerning conversations with Cindy Shaver met constant objections which were sustained by the court. Thus, the court's prior ruling rejecting the letter coupled with the refusal to permit the defendant to testify to the text of conversations with Cindy negate the argument of waiver. Nor did the defendant's reprehensible conduct during cross-examination constitute waiver.

The defendant's trial was interrupted by the defendant's physical assault upon the prosecuting attorney during the defendant's cross-examination. That physical assault, as outlined in the trial record, suggests grounds for contempt findings by the trial court and an independent basis for a prosecution for assault. (R. C. 2903.13.) However, the defendant's misconduct does not deprive him of the right to a fair trial on the charges alleged in the indictment, nor does it constitute a waiver of the error previously discussed.

### Authenticity

This case also presents the issue of the authenticity of the letter. Who is to decide whether the letter is

truly the act of the missing witness Cindy Shaver or is a fraud? In this case, by the discovery process, the prosecutor obtained a copy of the letter in advance of trial and submitted it to the Ohio Bureau of Criminal Invesigation and Identification. The prosecuting attorney, in the hearing outside of the jury, reported to the court that the BCI handwriting expert "cannot say for sure that, one way or the other, whether the particular letter or letters were in fact written by Cindy Shaver." The authenticity of impeaching evidence is a jury question. The jury decides whether to believe a witness who testifies that a previous witness has made contradictory oral statements. If a document is introduced for impeachment purposes, its authenticity is a jury question. Further, either party has the right additionally to offer testimony to support or discredit the document, but in the final analysis the issue of authenticity is for the jury.

In summary we find that the defendant had a due process right to present the letter in his case; that the issue of authenticity was for the jury; and that the defendant did not waive his right to introduce the letter when he failed to re-offer it during his own direct examination. Therefore, the second assignment of error is sustained.

The defendant asserts as his first assignment of error that the trial court erred in permitting the transcript of the testimony of the Shaver sisters, taken at the preliminary hearing, to be read at defendant's trial and that, as a consequence, defendant's right of confrontation was denied.

The trial court relied upon the provisions of R. C. 2945.49 in permitting the testimony. This section states:

"Testimony of deceased or absent witness. Testimony taken at an examination or a preliminary hearing at which the defendant is present, or at a former trial of the cause, or taken by deposition at the instance of the defendant or the state, may be used whenever the witness giving such testimony dies, or cannot for any reason be produced at the trial, or whenever the witness has, since giving such testimony, become incapacitated to testify. If such former

testimony is contained within a bill of exceptions, or authenticated transcript of such testimony, it shall be proven by the bill of exceptions, or transcript, otherwise by other testimony."

The appellant argues that Criminal Rule 15(F) has superceded R. C. 2945.49. As to pre-trial depositions, we agree. As to former testimony at preliminary hearings or former trials, we disagree. In the latter context, we find the statute and the rule to be complementary, rather than in conflict. Criminal Rule 15(F) provides for the taking of a deposition in advance of trial and its subsequent use at trial in such limited situations as where the witness is dead, out of the state, sick or beyond reach by subpoena. By contrast, R. C. 2945.49 permits the use of former testimony taken in other situations such as a former trial or at a preliminary hearing.

As the defendant was represented by counsel at the preliminary hearing when the testimony of the Shaver girls was given, the mandate of *Pointer* v. *Texas*, 380 U. S. 400, requiring the presence of counsel for the defendant at a preliminary hearing as a condition to the admissibility of preliminary hearing testimony at the subsequent trial, has been met.

In reviewing the record of the efforts made by the state to locate the missing witnesses Cindy and Joyce Shaver, we find no fault with the trial court's determination that the state's efforts to locate the missing witnesses were sufficient in the context of R. C. 2945.49, as discussed in *Mitchell* v. *State* (1931), 40 Ohio App. 367.

Further, we find that the recent decisions of the Supreme Court of the United States in *Barber* v. *Page* (1968), 390 U. S. 719, and *Mancusi* v. *Stubbs* (1972), 408 U. S. 204, are such as to justify the trial court's decision to apply the provisions of R. C. 2945.49 upon the showing of the state's efforts to locate the missing witnesses. In *Barber* v. *Page, supra,* the state, knowing that the missing witness was incarcerated in the federal penitentiary in a neighboring state, nevertheless failed to seek his removal from prison and presence at trial and relied upon his prior testimony.

The Supreme Court of the United States found that that action, given the known location of the witness and his availability to testify, constituted a violation of the confrontation cause of the Sixth Amendment and reversed, requiring a new trial. In *Mancusi* v. *Stubbs, supra,* the missing witness whose prior testimony was used at a subsequent trial was located abroad, in Sweden. Based on that determination, the Supreme Court of the United States found compliance with the confrontation clause and chose not to follow *Barber* v. *Page.*

In the instant case, the prosecuting attorney introduced testimony in the hearing outside of the jury, demonstrating that the mother of the missing witnesses did not know their exact location. Additionally, the testimony of police officers was introduced to demonstrate the efforts made to locate the witnesses prior to trial. That testimony was sufficient for the trial court to conclude that the necessary efforts had been made by the state to locate the missing witnesses.

Finally, the appellant contends that the "indicia of reliability" test, first pronounced in *Dutton* v. *Evans* (1970), 400 U. S. 74, and repeated in *Mancusi* v. *Stubbs, supra,* was not met in this case. The defendant points to the perfunctory cross-examination of the missing witnesses at the preliminary hearing in support of his argument. The "indicia of reliability" test was first used by Justice Stewart in *Dutton* v. *Evans* in a situation where no confrontation of the witness occurred. Unlike the case in hand, where the defendant did have the right of confrontation at the preliminary hearing, Shaw, the witness in *Dutton* v. *Evans,* was a fellow prisoner of a co-conspirator of Evans. Shaw was permitted to testify under Georgia law to a statement made by Williams, a co-conspirator of the defendant Evans, in the concealment phase of a conspiracy which had resulted in the slaying of three Georgia police officers. Justice Stewart, in announcing the judgment of the court, discussed a number of factors which he labeled as "indicia of reliability," with regard to the statements of the prisoner who had overheard the remarks of the co-con-

spirator Williams, and concluded that they were admissible notwithstanding the confrontation clause of the Sixth Amendment. Then in *Mancusi* v. *Stubbs,* the indicia of reliability theory was applied to the prior testimony of the missing witness who had in fact been confronted by counsel for the defendant at the prior trial.

We would dismiss the indicia of reliability argument without further discussion if we were to rely solely upon the reason advanced by defendant—namely, the limited cross-examination of the witnesses at the prior confrontation. This fact standing alone we find insufficient to establish a failure of "indicia of reliability." However, we find in examining the testimony of the witnesses at the preliminary hearing that it consisted, in part, of affirmative and negative answers in response to questions put by the prosecutor as to whether or not the witness had previously given a written statement incriminating the defendant. We find those affirmative and negative answers to be of such a nature as to give rise to the question of whether the recent Supreme Court test of "indicia of reliability" has in fact been met by the preliminary hearing testimony. However, in view of the fact that this test first appeared in *Dutton* v. *Evans, supra,* where there was no confrontation of the witness in contrast to the case at hand, we hold that the application of the "indicia of reliability" test to the preliminary hearing testimony of the missing witnesses is not warranted. Thus, we overrule the first assignment of error.

Having sustained the second assignment of error, the defendant's conviction is reversed. This cause is remanded to the Common Pleas Court of Guernsey County for further proceedings according to law.

*Judgment reversed.*

PUTMAN and VAN NOSTRAN, JJ., concur.