THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KEITH KEATING, Defendant-Appellant.

Second District   No. 2—92—0218

Opinion filed November 29, 1993.

G. Joseph Weller and Steven E. Wiltgen, both of State Appellate De-
fender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and
Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office,
of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:
Defendant, Keith Keating, pleaded guilty to aggravated battery
(Ill. Rev. Stat. 1991, ch. 38, par. 12—4(a) (now codified, as amended,
at 720 ILCS 5/12—4(a) (West 1992))). On appeal, defendant contends
that the trial court abused its discretion by sentencing him to four
years' imprisonment and that defendant should receive a credit of $85
for the jail time he served prior to his conviction.
A brief review of the facts is necessary to determine whether the
trial court abused its discretion in sentencing the defendant to four

years' imprisonment. The State presented a factual basis which indicated that on June 12, 1991, Deputy James J. Packard was attending a Rockford Expos baseball game with his family. At approximately 9:20 p.m., Packard saw several park security people and park district police chief, Jerry Venable, escort defendant and another man out of the park. The men were being evicted from the park for being drunk and disorderly and for harassing employees and other people at the game. Packard assisted Chief Venable with the two men. Defendant and Packard began to argue. Defendant picked Packard up around his waist and threw him to the ground, causing Packard's head to slam against the pavement. As a result, Packard suffered a skull fracture, a laceration to his head, a separated shoulder, and some fractured ribs.

At the sentencing hearing, Deputy James Packard of the Winnebago County sheriff's department testified that on June 12, 1991, he and his family had gone to see a Rockford Expos baseball game. While exiting the ball park, Packard saw Jerry Venable arguing with two men. Packard offered his assistance to Venable, who was trying to eject the two men from the ball park. Packard identified one of the men as defendant and the other as Chad Issler. Packard identified himself to defendant and his companion as an off-duty police officer.

The men were using obscene language and refusing to leave. After Jerry Venable left to get his badge, Issler approached Packard, pushed him and took a swing at him. Packard remembered only that he "went after" Issler. The next thing Packard remembered was waking up in a hospital several days later. Packard sustained five broken ribs, a separated shoulder and a fractured skull, with the inner lining of the skull broken. As a result of the skull injury, Packard needed to take medication for seizures. Packard also sustained a hearing loss and nerve damage to his left ear.

Defendant testified that on June 12, 1991, he was watching a Rockford Expos baseball game with his friend, Chad Issler. Defendant drank three or four beers during his stay at the game. According to defendant, Issler began to harass two girls at a souvenir stand, but defendant persuaded Issler to sit down. Later, on their way out of the ball park, Issler saw some girls that he knew and began talking to them. One of them was a vendor, and her boss came over and told Issler to leave the vendor alone because Issler was keeping the girl from doing her job. When Issler was not cooperative, the man told Issler that he must leave the park. Defendant began to argue with the man, and the man indicated that defendant must also leave. Security guards came to escort defendant and Issler out of the park.

Once outside the gate, defendant began to walk away, but Issler stayed behind with Deputy Packard. According to defendant, Packard and Venable may have told Issler that they were police officers, but defendant did not hear Packard identify himself as one. Venable told Issler that he was under arrest for battery, and Issler ran behind defendant. Packard told defendant to move out of the way, and defendant refused. Defendant indicated that Packard swung and hit him on the side of his face. After finishing his cigarette, defendant asked Packard why he had hit him. Defendant then tackled Packard.

Defendant admitted that he believed Packard hit him by accident when he was actually trying to hit Issler. According to defendant, his consumption of alcohol may have played a role in causing him to grab Packard in anger. Defendant admitted that he had been on a wrestling team in school, but he denied that he intended to hurt Deputy Packard. When defendant picked Packard up by the waist, he must have used "too much forward motion," and, as a result, Packard fell down and hit his head on the pavement. Defendant was shocked when Packard did not get back up.

■ Defendant raises as his first issue whether the trial court abused its discretion in sentencing him to four years' imprisonment. Defendant points to his lack of a significant criminal record, his acceptance of responsibility, and his obvious remorse as factors supporting a lesser sentence. A trial judge's sentencing decision is entitled to great deference and weight. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) Even though a reviewing court may have weighed the sentencing factors differently, its power to alter or reduce a sentence pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)) is limited to those cases in which a trial court has abused its discretion. (*People v. Posedel* (1991), 214 Ill. App. 3d 170, 182.) Defendant points to a light criminal record which consisted of two misdemeanor convictions for consumption or possession of alcohol and two traffic violations. The record shows that the trial court did consider defendant's lack of a significant criminal history, as well as his apparent remorse. However, the court must consider not only the defendant's history and his rehabilitative potential, but the court must also consider the seriousness of the offense, the need to protect society, and the need for deterrence. *People v. Goodwin* (1991), 208 Ill. App. 3d 829, 831.

The trial court is in a better position than a reviewing court to fashion an appropriate penalty after firsthand observation of defendant and consideration of such factors as defendant's credibility, his demeanor, general moral character, mentality, social environment, habits and age. (*People v. Streit* (1991), 142 Ill. 2d 13, 19.) In this case,

defendant's conduct was unprovoked and of a nature which was likely to, and, in fact did, cause serious injury. The trial court noted that defendant's criminal history involved alcohol use, and defendant admitted that his actions in the instant case may have been due to his alcohol consumption at the game. While out on bond for the instant offense, defendant was arrested for driving under the influence, thereby demonstrating defendant's continuing lack of concern for his problems with alcohol. Certainly, the trial court could properly have found that similar problems were likely to occur in the future when defendant drank alcohol and that defendant had not yet learned the importance of controlling his alcohol consumption and behavior.

Defendant also contends that the magnitude of the injury to Deputy Packard was not foreseeable and therefore the defendant did not contemplate that his criminal conduct would cause or threaten serious harm, a factor which should have been considered in mitigation. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—5—3.1(a)(2) (now 730 ILCS 5/5—5—3.1(a)(2) (West 1992)).) We do not agree with defendant's argument that the trial court improperly failed to find in mitigation that defendant did not contemplate that his criminal conduct would cause or threaten serious harm. Defendant argues that the injuries incurred were not those reasonably foreseeable from defendant's actions. We disagree. Defendant grabbed Packard by the waist, lifted him up, and threw him down on the pavement. That serious injury could occur was not unforeseeable.

Defendant disputes the trial court's determination that this was a "vicious" attack. Citing the case of *People v. Conway* (1971), 3 Ill. App. 3d 69, defendant argues that the facts must be akin to the facts in that case in order to be "vicious." In *Conway*, defendant exchanged obscenities with the occupants in another car and then got out of his car at a stoplight, approached the victim, and cut him in the face with a razor. (*Conway*, 3 Ill. App. 3d at 71.) The wound required 80 stitches to close. (*Conway*, 3 Ill. App. 3d at 74.) In comparing the facts to those here, defendant claims that the conduct here did not warrant the trial court's characterization as "vicious." We do not agree. While the facts in *Conway* may have illustrated "vicious" conduct by a defendant, we do not find that the trial court incorrectly determined that the facts here also indicated "vicious" conduct by defendant Keating. In the instant case, defendant knew that Issler had created a disturbance leading to Packard's actions in assisting Issler and defendant from the park. Defendant also knew Issler had attempted to strike Packard and Packard hit defendant only because he was attempting to strike back at Issler, who was hiding behind defendant. Despite this, defendant coolly, in a calculated manner, finished smoking his cigarette and then grabbed Packard

by the waist and flung him onto the pavement. We do not believe the trial court erred in characterizing defendant's conduct in this case as "vicious."

Aggravated battery, a Class 3 felony (Ill. Rev. Stat. 1991, ch. 38, par. 12—4(e) (now codified, as amended, at 720 ILCS 5/12—4(e) (West 1992))), is punishable by a term of imprisonment of two to five years (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(6) (now codified, as amended, at 730 ILCS 5/5—8—1(a)(6) (West 1992))). Under the circumstances of this case, the trial court did not abuse its discretion in sentencing defendant to a term of four years' imprisonment.

■■ Defendant's second contention is that he is entitled to a refund of $85 on his fine as he was in prison for 17 days on a bailable offense.

Section 110—14 of the Code of Criminal Procedure of 1963 provides in part:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. The clerk of the court shall notify the defendant in writing of this provision of the Act at the time he is convicted." (Ill. Rev. Stat. 1991, ch. 38, par. 110—14 (now 725 ILCS 5/110—14 (West 1992)).)

We note that defendant did not raise this issue in the trial court, but defendant's failure to apply for the credit does not bar such an application on appeal where the record fails to indicate that the clerk of the court notified defendant in writing of the statutory provision. *People v. Laster* (1990), 208 Ill. App. 3d 482, 483.

The State has confessed error, and we are in agreement that defendant is entitled to a credit of $5 per day for each day that he spent incarcerated awaiting trial for the charged offense. (*People v. Garcia* (1991), 217 Ill. App. 3d 350, 352.) Therefore, since defendant's fine has already been applied against the bond he posted at a later date, the trial court must order the clerk of the court to refund $85 for the 17 days that defendant served prior to conviction and sentencing.

Accordingly, the judgment of the circuit court of Winnebago County is affirmed as modified to reflect $85 credit against defendant's fine.

Affirmed as modified.

WOODWARD and GEIGER, JJ., concur.